20-1018 RDB Properties, LLC v. City of Berwyn Mr. Schonder Good morning, Justices. My name is Steve Schonder for the Appellants, RDB Properties, LLC and David Miklos. So, may it please the Court, the District Court erred in dismissing RDB's complaints under the Fifth Amendment's Taking Clause because it used the wrong standard for this type of a taking. As we detailed at length in our brief, there's classic takings, which are direct government occupations of private property. A classic taking is a transfer of property to the state. So, Mr. Schonder, let me interrupt. I need to be very clear what you think was taken. And I'll give you two options, and maybe there are more, and you can tell me if there are. One option is the question whether you're asserting a private property right in the public parking areas in front of the house. The next might be, are you asserting an invasion of private property from the noise and the light and the other nuisance-like features of this area? Those are the two possibilities, and I'll tell you right off, I don't see how there's any private property right in the public parking areas. But you can address that, if you will. I will, Your Honor, and you're correct. Those were the two property rights that were asserted in a complaint. So, property, for the purposes of the Fifth Amendment takings claim, it's defined very broadly. It protects real property, protects personal property, and also intangible interests in property, like the secrecy of a trade secret. So, I don't think it's unprecedented to consider the value of parking as a property right under the First Amendment. And I cited two cases, admittedly, not persuasive or not binding on this court. There was the Vermont case, the UMB Bank v. City of Winooski, where the court, like here, where there was really no record in the district court, they refused to dismiss the case, were involved a claim of a taking of parking in a city-owned parking garage. And then also, I had the Connecticut Supreme Court case that recognized the value of street parking to a business. But in this city, correct me if I'm wrong, but I am not aware of anything from the city of Berwyn that assigns parking places directly to the house in front of them. Many cities, Chicago included, Berwyn, you know, have like residential zone 15 or something like that, and you can park anywhere in that general area. But this would be a real extension, it seems to me, of the notion of private property rights. Well, the idea of having parking in front of your house in a congested area, I mean... Oh, I'm sure you would like it. I mean, I... It's invaluable. Yeah, it's very, very valuable. But, I mean, there's even a Calvin Trillin book about it. Tepfer isn't going out, you know, about finding parking places in New York City. I mean, people want them, but that doesn't mean they have a private property right in them. Sometimes people wake up very early and get the first slot at the, you know, the train parking lot or something. It's just the public competing for these parking places. Well, I do think that there's a... It's not so much competition for the parking spaces, but when people have parking in front of their house, there's not so much competition in front of... You know, people will respect the rights of people to park in front of their house. It's very... It's super inconvenient. But how does that make it a personal property interest? Again, as Judge Wood said, it's certainly valuable. People want it. It's an inconvenience if you don't have it, but if that were the standard, we'd have a lot more property rights out there. Well, that's a very good question. I think that if you look at the cases under Penn Central, or at least the test under Penn Central, where it's an ad hoc test... Now we're in the realm of regulatory takings, but we still need the underlying property interest. That's true. But when you buy a piece of property, probably one of the most important things other than just location is, is there parking? And I think that the value of that just enters into your private property, into the parcel, basically. Let me ask you a question. Is what bothers your client the loss of property and the conversion of the space to a parking lot for a private commercial enterprise? Is that part of what bothers your client? That is part of what bothers the client. So let's change the fact pattern, then, and just hypothesize that the city created a parking lot for a nearby public park for park patrons to park in. Does that become a taking? Well, in that case, though, then, Mr. Mekos' tenants could park in that lot as well. No, no, no. There's a sign. Park patrons only. So the difference between my hypothetical is that the space is devoted to kind of a quintessential public purpose or public use. Whereas in this one, what is it, a bakery? The bakery got the parking lot. Toronto, yeah. And so I asked the question because that's what I was wondering. Is that what really is concerning your client, that, hey, a private business just got a parking lot? Right, it is. And it's not a legitimate use of police power. In other words, a public park, that would be a legitimate use of the city's resources. But this was not. I mean, the Illinois Constitution prohibits the city from just giving away public land for a private purpose. And we think that's what happened here. But you didn't make an argument under Kelo. Yeah, that's right. I didn't because there was no. It wasn't a condemnation case. Right. At best, it's a rezoning case. And, I mean, the fundamental problem is whether there was a property interest that your client could assert with the takings clause, as opposed to simply, you know, they decided to rezone something. So I gather they bought, first of all, the company bought up all these houses, then they rezoned it to mixed industrial commercial and knocked down the houses and built the lot, and then they created cul-de-sacs, right? Well, they created the cul-de-sacs. Now, some people might like the cul-de-sacs, less traffic coming through. But he's not one of them, I guess. Well, because it took away the parking in front of his house. And what they did was that, so we have, like, the 25-foot lot, and then there's the 25-foot-wide strip of streets, and then it goes into the next lot across the street. And that was formerly the streets because the public property is now private property for the Toronto bakery parking lots. So do you think that the city of Chicago violated the takings clause when it sold what had previously been open public parking places to the company that now runs most of the parking in the greater downtown area? No, because they got compensation for it. This is just a strip moving away. Not the people who used to have free parking in front of their building and now don't. Well, I think the city always had parking meters, and they just sold the rights to the meters. Well, some neighborhoods say didn't, others say didn't. There was a lot of free parking before that sale. You could find on a lot of city streets, as you probably know, downtown, open spots. You might have to get there early to be sure, but they existed. I think those are mostly commercial districts, probably. I don't think that they did that in residential districts. Okay, well, if you want to save a few minutes for rebuttal, I'm going to suggest a minute. Now's the time. Okay, I will do that. Thank you. All right, Ms. Granfield. Good morning. May it please the court. This is Cynthia Granfield, and I'm here for the defendant's city of Berwyn. I think as the court has raised in their questions to the plaintiffs in this case, the problem in this case is that before you can even get to any sort of takings analysis, like, for example, the Penn Central that is emphasized by plaintiffs in their briefs, you first have to determine if there is, in fact, a legitimate property interest. And in this case, there is not. Now, you did ask the appellant a lot of questions about whether there was a right to street parking. There was any sort of property interest. And in fact, I had noted that the plaintiff does not establish any sort of legitimate property interest to the street parking. What about Ms. Granfield, the other part of his case? You know, he says that, you know, compared to what it was like before, now there is, A, a loss of aesthetic value of the property because this big parking lot now is right behind him, and, B, there is an actual invasion of noise and light and the sorts of things that one might pursue in a nuisance case. So is that enough to create some kind of claim for compensation? I don't believe that that is enough to create a claim for compensation because that really is going to his use and enjoyment of the property. And the property interest that he's really trying to assert is that the city is required to enforce its noise, traffic, and lighting ordinances against Toronto. And I think that the 7th Circuit has already said that that does not constitute in taking pursuant to Barbian, the 7th Circuit case in 1982, and again affirmed by the 7th Circuit in the Muscarella versus Ogle County case in 2005. I would want to note that specifically in Muscarella, the 7th Circuit noted that residential landowners have no property interest in the enforcement of zoning laws on adjacent property. So I don't believe that he has sufficiently alleged a legitimate property interest with respect to the noise, traffic, and aesthetic value effect. Do you think he would have a private claim against Toronto for a private nuisance? Perhaps. Okay. Ms. Granfield, the district court here dismissed the case and did not give leave to amend. Typically, we have said a plaintiff should have at least one shot, additional shot. Why shouldn't we give that here, even if the district court got it right? I would say that that shouldn't be given here for a couple of reasons. First of all, the plaintiff did not attempt to exercise their right to amend as a matter of right pursuant to 15AB1. After we filed the motion to dismiss, they did not argue in response to our motion to dismiss, either primarily or even in the alternative, that they could amend the complaint to correct it. And I would also say that it would be an exercise in futility for them to attempt to correct it because I don't think that they're going to be able to allege a legitimate property interest with respect to the street parking for the reasons stated in our brief and discussed here today. And I don't think they're going to be able to allege a legitimate property interest with respect to the enforcement of ordinances against Toronto property. And even if they were able to do so, the only possible path that I could see that they would be able to proceed under would be under Penn Central. And those factors do not favor them. And I don't see any set of allegations that they could raise that would support a Penn Central analysis. Specifically with respect to the street parking, I also just wanted to note as for practical purposes, that plaintiff indicated that he made some reference to the super zones in his parking. He's actually not in a super zone. Plaintiff's property address is 1214 Scoville Avenue, which is referenced in paragraph two of his complaint in the record at A002. And so if you look at the Berwyn's parking ordinance, he's actually not in a super zone with preference. And a reason for that is that he also references the zoning map and he is actually not in a heavily residential area for the city of Berwyn because Toronto is on several blocks on Roosevelt Road, which is all directly north of plaintiff's property. And that is a mixed use and the R2 zone that he references is only half of his block and the rest of it is R1. And further still, he has a map that is in the complaint itself as well, like a Google Earth image. And it clearly shows that he has a garage and an alley that's after paragraph seven in the record A003. So again, just for practical purposes, this isn't even something that would be a substantial benefit to the plaintiff, which I think also goes to the effect of the economic impact on him if there were to be a consensual analysis conducted, which I don't think there necessarily needs to be because, again, I don't think that he has a legitimate property interest in the street parking. But I just wanted to note that as a matter of course. And I assume the Berwyn parking ordinance is a matter of public record. No reason we wouldn't be looking at that. Right. It is a matter of public record. I will note that I don't know that plaintiff put a link in his brief that doesn't connect, but I can file a rule 28 that just lists the link, if that's helpful at all to the court on am legal. OK, why don't you do that? OK, I will. So, Your Honors, just in summary, unless you have any further questions for me, I would just say that the plaintiffs have failed to allege nor can they allege a legitimate property interest. And even if they were able to do so, they're not going to be able to establish the factors for certainly not a physical taking, not a per se regulatory taking under Lucas and not a Penn Central regulatory taking. So for all of those reasons, I believe that the district court opinion should be deferred. All right. Thank you very much. I'll give you a minute. Mr. Chandra to respond just briefly in terms of the noise and other sort of nuisance type allegations in the complaint. So our beef there is not that they changed the ordinance to make it into a parking lot. We're not doing that. It's just that the city didn't enforce the ordinance. And that's what a lot of the harm is coming from. I mean, a lot of these things could be alleviated if they had just put in landscaping, things of that nature, which they just didn't do. And I don't think that that's what the court meant in Muscarello. And then the district court did find that, you know, unlike in Barbian, where the harm was just coming from the third party, that the city was sufficiently entwined that it was like an enterprise type of a violation, again, in Griggs and some of those airport cases that we cited. So unless you have any other questions, just ask that the district courts be reversed. And as you suggested, they would be allowed to replead. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.